UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JERRY ISHAM,** | Case No. 1:19-CV-00577 |
| and | |
| | Judge _____ |
| **ANTHONY EDWARDS,** | |
| Plaintiffs, | |
| | **COMPLAINT FOR DAMAGES** |
| v. | |
| **CITY OF CINCINNATI,** | |
| and | |
| **ROSE M. VALENTINO,** Officer, Cincinnati Police Department, | |
| and | |
| **DAVID W. KNOX,** Officer, Cincinnati Police Department, | |
| and | |
| **DUSTIN P. PEET,** Officer, Cincinnati Police Department, | |
| Defendants. | |

JERRY ISHAM and ANTHONY EDWARDS for their Complaint hereby alleges as follows:

## PARTIES

1. Plaintiff JERRY ISHAM, an African-American, is a citizen of the State of Ohio and is a resident within this District.

2. Plaintiff ANTHONY EDWARDS, an African-American, is a citizen of the State of Ohio and is a resident within this District.

3. At all relevant times, Defendant CITY OF CINCINNATI is a municipal corporation under the laws of the State of Ohio and, pursuant to Ohio Rev. Code § 715.01, may sue and be sued.

4. At all relevant times herein, the CITY OF CINCINNATI possessed final policymaking authority and training for the CITY OF CINCINNATI, including the Cincinnati Police Department.

5. At all relevant times, Defendant ROSE M. VALENTINO is and was a police officer with the Cincinnati Police Department and operating under color of state law.

6. At all relevant times, Defendant DAVID W. KNOX is and was a police officer with the Cincinnati Police Department and operating under color of state law.

7. At all relevant times, Defendant DUSTIN P. PEET is and was a police officer with the Cincinnati Police Department and operating under color of state law.

8. At all relevant times, all actions taken by all of the Defendants herein were undertaken under color and authority of state law

9. At all relevant times, all actions taken by Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET were the direct and proximate result of the failure of the CITY OF CINCINNATI to properly train members of the Cincinnati Police Department, including Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET, as to the constitutional rights and interest implicated here so as to constitute and demonstrate a deliberate indifference to the rights, privileges and immunities of those with whom they interact, including JERRY ISHAM and ANTHONY EDWARDS.

## JURISDICTION & VENUE

10. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as the Defendants reside within this District, the Defendants transact business within this District and the conduct complained of occurred within this District.

## BACKGROUND FACTS

12. In or about November 2018, including on November 17, 2018, the residence located at 1093 Morado Drive was listed for sale through a real estate agent.

13. 1093 Morado Drive is located in the West Price Hill/Covedale area within the City of Cincinnati.

14. On November 17, 2018, the residence at 1093 Morado Drive contained a real estate combination lock box located on the front door handle, as well as a sign in the yard indicating that the residence was listed for sale with a real estate agent.

15. A real estate combination lock box is a vault that holds house keys and is normally attached to a door handle, gas meter, water pipe or gate. It is commonly used by real estate agents to show a property listed for sale because it provides convenient access and privilege to the residence or building when the owner is not around.

16. JERRY ISHAM is a licensed real estate broker in the State of Ohio, having such a license since 2006. Prior to that, JERRY ISHAM possessed a license as a real estate salesperson since 1987.

17. As a real estate broker/agent, JERRY ISHAM arranged to show the residence at 1093 Morado Drive to ANTHONY EDWARDS, a client who was in the process of looking to purchase a residence.

18. Arriving at 1093 Morado Drive at approximately 1:45 *p.m.*, on November 17, 2018, JERRY ISHAM and ANTHONY EDWARDS gained access to the residence through the use of

the real estate combination lock box located on the front door handle.

19. Unbeknownst to either JERRY ISHAM or ANTHONY EDWARDS, Thomas Branigan, a retired officer with the Cincinnati Police Department, was outside his residence located at 1096 Morado and observed JERRY ISHAM and ANTHONY EDWARDS entering the residence at 1093 Morado Drive.

20. Upon observing JERRY ISHAM and ANTHONY EDWARDS entering the residence at 1093 Morado Drive, Thomas Branigan immediately called 911 reporting that he observed "two black males forced the front door open" to the residence at 1093 Morado Drive.

21. Neither JERRY ISHAM nor ANTHONY EDWARDS forced open the front door to the residence at 1093 Morado Drive and, thus, such a report to 911 was false.

22. Nonetheless, in light of the false report of Thomas Branigan, officers with the Cincinnati Police Department were dispatched to 1093 Morado Drive.

23. The dispatcher advised the officers responding to 1093 Morado Drive that no firearm was observed on the subjects of the 911 call, but that the complainant himself, *i.e.*, Thomas Branigan, did possess a firearm.

24. Initially responding to the residence at 1093 Morado Drive were Officer DUSTIN PEET and Officer DAVID KNOX.

25. While Officer DAVID KNOX proceeded around the left side of the residence at 1093 Morado Drive to inspect the rear of the property, Officer DUSTIN PEET positioned himself in the front of the residence.

26. Officer DUSTIN PEET waited in the front of the residence at 1093 Morado Drive for just over a minute until Officer ROSE VALENTINO arrived on scene and at the residence, positing herself on the right side of the residence.

27. As he observed JERRY ISHAM and ANTHONY EDWARDS in the main living area of the residence at 1093 Morado Drive come near the front door, Officer DUSTIN PEET proceeded to place himself in full view from the interior through a large window and simply beckoned JERRY ISHAM and ANTHONY EDWARDS to "come on out".

28. As JERRY ISHAM and ANTHONY EDWARDS were unhesitently complying with the request of DUSTIN PEET to "come on out", Officer ROSE VALENTINO immediately escalated the situation as JERRY ISHAM and ANTHONY EDWARDS exited the residence.

29. Having already unholstered her firearm, immediately upon JERRY ISHAM and ANTHONY EDWARDS exiting the residence at 1093 Morado Drive, Officer ROSE VALENTINO aimed her firearm at JERRY ISHAM and ANTHONY EDWARDS and demanded "Hands up!". As view from her body camera at this moment follows:



30. Almost immediately upon exiting the residence onto the porch, ANTHONY EDWARDS declared to Officer ROSE VALENTINO and Officer DUSTIN PEET that they had an appointment to see the house as JERRY ISHAM was a real estate agent.

31. At this time, Officer ROSE VALENTINO immediately seized the person of JERRY ISHAM, placing him into handcuffs with the declaration it was necessary "til we can confirm".

32. JERRY ISHAM kept his hand raised in the air from the moment ROSE VALENTINO demanded "Hands up!" until she placed him in handcuffs; in contrast, ANTHONY EDWARDS immediately lowered his hands upon existing the residence and sought to explain that they there to inspect the residence that was for sale.

33. Yet, despite such a difference in the reaction by JERRY ISHAM and ANTHONY EDWARDS, ANTHONY EDWARDS was not immediately placed into handcuffs.

34. Instead, ANTHONY EDWARDS proceeded, with passion, to raise the racial aspects of the engagement, claiming they would have received different treatment if they were white. In turn, Officer DUSTIN PEET and Officer DAVID KNOX (who had arrived back to the front of the house) started engaging in a verbal exchange with ANTHONY EDWARDS.

35. With JERRY ISHAM having been placed in handcuffs and ANTHONY EDWARDS continuing his banter (though still not being placed in handcuffs), ROSE VALENTINO then moved JERRY ISHAM in handcuffs to the back section of the porch of the residence at 1093 Morado Drive.

36. In the meantime, as part of the verbal exchange that was continuing between ANTHONY EDWARDS, on the one hand, and Officer DUSTIN PEET and Officer DAVID KNOX, on the other hand, ANTHONY EDWARDS made no furtive moves whatsoever.

37. After listening to the repeated contentions of ANTHONY EDWARDS, Officer DUSTIN PEET and Officer DAVID KNOX simply grew tired of hearing the speech of ANTHONY EDWARDS, at which point, Officer DAVID KNOX then directed Officer DUSTIN PEET to "put cuffs on him".

38. In response to the protestations of ANTHONY EDWARDS of being handcuffed, Officer DUSTIN PEET declared to ANTHONY EDWARDS what was occurring to him is "called being detained", though no basis for such "detention" was ever stated.

39. In the meantime, Officer ROSE VALENTINO was engaged with JERRY ISHAM (still in handcuffs) at the rear of the porch of the residence at 1093 Morado Drive.

40. At no time did Officer ROSE VALENTINO proceed to pat down JERRY ISHAM.

41. Instead, Officer ROSE VALENTINO proceeded immediately to reach deeply into the pockets on JERRY ISHAM's jacket, pulling out and searching the items therein and she did so without a warrant authorization such a search, and all the while JERRY ISHAM was in handcuffs.

42. The only pat down of JERRY ISHAM occurred when Officer ROSE VALENTINO ultimately indicated to Officer DAVID KNOX that she had not searched the crotch area of JERRY ISHAM to which Officer DAVID KNOX undertook a very cursory pat-down in that area.

43. In all, the only basis that Officer ROSE VALENTINO stated for escalating the situation to include the use of handcuffs (after she had already demonstrated the use of force through the drawing and aiming of her firearm) was her statement that such use was being done "til we can confirm".

44. At no time did Officer ROSE VALENTINO make any statement or give any indication that the use of handcuffs was necessary to secure the scene in order to first assure officer safety.

45. In fact, none of the responding officers, including Officer ROSE VALENTINO, had

any reason to believe that either JERRY ISHAM or ANTHONY EDWARDS possessed a firearm that might place any officer's safety at risk.

46. In fact, the only non-law enforcement person in the vicinity of 1093 Morado Drive who undisputedly possessed a firearm during the police engagement with JERRY ISHAM and ANTHONY EDWARDS was the complainant who called 911.

47. Despite the knowledge of the officers with the Cincinnati Police Department responding to 1093 Morado Drive on November 17, 2018, that the complainant possessed a firearm, those officers – including Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET – allowed the complainant to helicopter around the residence at 1093 Morado Drive at the free will of complainant. None of the officers involved at 1093 Morado Drive on November 17, 2018, undertook any action to secure the scene at 1093 Morado Drive by having the complainant (and his firearm) immediately removed from the vicinity so as to promote and ensure officer safety.

48. At no time did Officer ROSE VALENTINO undertake activity that could reasonable be construed as promoting officer safety; instead, Officer ROSE VALENTINO immediately started to conduct a warrantless search of the pockets of JERRY ISHAM's jacket, clearly hoping to find contraband (which was not present).

49. Through the warrantless search of the pockets of JERRY ISHAM's jacket, ROSS VALENTINO did locate identification and realtor business cards on JERRY ISHAM.

50. Yet, even having located identification and realtor business cards on JERRY ISHAM, Officer ROSE VALENTINO continued to confine and restrict the freedom and liberty of JERRY ISHAM and kept him in handcuffs.

51. In fact, notwithstanding: (i) the lack of any indication that JERRY ISHAM had ever

attempted to flee; (ii) JERRY ISHAM's complete cooperation throughout his dealings with the police (including Officer ROSE VALENTINO); (iii) the location of identification and relator business cards of JERRY ISHAM by Officer ROSE VALENTINO illegally searching through his pockets while he was handcuffed; and (iv) no weapon being located, Officer ROSE VALENTINO continued to detain JERRY ISHAM in handcuffs for at least another 2 minutes after Officer ROSE VALENTINO had such information.

52. By this time – with JERRY ISHAM still in handcuffs at the back of the porch with ROSE VALENTINO and ANTHONY EDWARDS taken down the steps from the porch with DUSTIN PEET – at least three other officers appeared on scene, bringing the total number on scene to at least 6 police officers.

53. Apparently recognizing the overwhelming police presence at the scene and the non-threatening nature of the situation, Officer DAVID KNOX apprizes the dispatcher that "we don't need any more cars here."

54. Nonetheless, other police officers continue to the scene at 1093 Morado Drive so as to allow the overwhelming police presence to dominate the situation. Even after additional police officers were apprised that they were not need at the scene, at least another 3 officers arrived on scene, bringing the total police presence to at least 9 officers.

55. With the entire scene secured with respect to JERRY ISHAM and ANTHONY EDWARDS (though the scene was still not secured with respect to the complainant who undisputedly possessed a firearm and was allowed to helicopter about) and the close proximity of at least 9 police officers with the Cincinnati Police Department, Officer ROSE VALENTINO, Officer DUSTIN PEET and Officer DAVID KNOX continued to detain and restrain the freedom and liberty of JERRY ISHAM and ANTHONY EDWARDS through the continued use of

handcuffs.

56. Even though no weapons were located on them, they made no furtive moves or otherwise attempted to flee, *etc*., and the overwhelming presence of law enforcement officers, both JERRY ISHAM and ANTHONY EDWARDS continued to be handcuff, with their freedom and liberty restrained, while Officer DAVID KNOX and another Cincinnati Police Officer (Officer Kelly N. Reindl) proceeded into the residence to conduct a search of the residence.

57. Upon entering the residence and inspecting the front door, Officer DAVID KNOX declared to Officer Kelly Reindl that "According to the complainant, they forced in here. But it doesn't look like it to me." Notwithstanding this recognition, JERRY ISHAM and ANTHONY EDWARDS continued to be handcuff with their freedom and liberty restrained.

58. Later, Officer Kelly Reindl inquired of Officer DAVID KNOX that "I though the witness said they kicked in the door" to which Officer DAVID KNOX declared "That's what he said." (And nothing has become of the complainant inflating and falsifying reports to law enforcement.)

59. In addition to seeing no evidence of the forced entry into the residence, Officer DAVID KNOX and Officer Kelly Reindl also observed and inspected the lock box by which JERRY ISHAM and ANTHONY EDWARDS had gained access to the residence as they had previously indicated to Officer ROSE VALENTINO, Officer DUSTIN PEET and Officer DAVID KNOX. Notwithstanding the confirmation of the presence and use of the lock box, JERRY ISHAM and ANTHONY EDWARDS continued to be handcuff with their freedom and liberty restrained.

60. It was not until a complete search of the residence and further consultation with the sergeant from the Cincinnati Police Department on scene (Sergeant Tytus Fillmore) did Officer DAVD KNOX finally directed that handcuffs be removed from JERRY ISHAM and ANTHONY

EDWARDS.

61. The entire foregoing encounter between JERRY ISHAM and ANTHONY EDWARDS and the use of overwhelming force from the Cincinnati Police Department occurred in the presence of the 9-year old son of JERRY ISHAM.

62. While certain aspects of the foregoing encounter by members of the Cincinnati Police Department with the complainant, as well as with JERRY ISHAM and ANTHONY EDWARDS, were recorded through police body cameras and police cruiser cameras, other aspects of the encounter were either deliberately not recorded or deleted.

63. Cincinnati Police Department Procedure Manual § 12.540 addresses the use of police body cameras and specifically provides that such cameras may "must be activated when the officer arrives on-scene or announces he/she is on-scene in the area and must be recorded in its entirety."

64. Cincinnati Police Department Procedure Manual § 12.540 addresses the use of police body cameras and specifically provides that such cameras may be deactivated but only upon clearing the call and then specifies that the cameras are not required to be activated while completing paperwork "as long as [the officers] are not interacting with the public."

65. Based upon information and belief, through deliberate and conscious action, Officer ROSE VALENTINO and Officer DUSTIN PEET prematurely terminated the recording of the incident on their police body cameras as they continued to have an extended discussion with a member of the public, *i.e.*, the complainant, concerning the events at 1093 Morado Drive. Alternatively, based upon information and belief, such recordings were subsequently deleted. Based upon information and belief, such unrecorded (or deleted) videos would have contained information adverse to the Defendants.

**FIRST CAUSE OF ACTION**
**(Deprivation of Civil Rights, 42 U.S.C. § 1983)**

66. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

67. In view of all the circumstances surrounding the foregoing incident at 1093 Morado Drive on November 17, 2018, a reasonable person would have believed JERRY ISHAM and/or ANTHONY EDWARDS were not free to leave from their encounter with Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET.

68. The aiming of a firearm by Officer ROSE VALENTINO at JERRY ISHAM and/or ANTHONY EDWARDS at 1093 Morado Drive on November 17, 2018, was unwarranted.

69. The immediate or quick use of handcuffs by Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET on JERRY ISHAM and/or ANTHONY EDWARDS at 1093 Morado Drive on November 17, 2018, was unwarranted.

70. In view of all the circumstances surrounding the foregoing incident at 1093 Morado Drive on November 17, 2018, including, without limitation, the immediate threat of the use of a firearm, the placement of JERRY ISHAM and/or ANTHONY EDWARDS into handcuffs, the timing of placing them in handcuffs, the lack of any immediate pat down of JERRY ISHAM, the use and/or continued or extended use of handcuffs on JERRY ISHAM and ANTHONY EDWARDS in light of no immediate or articulable threat to the officers existing, the continued or extended use of handcuffs on JERRY ISHAM and ANTHONY EDWARDS even after the facts and circumstances dispelled any suspicions or hunches, and the rummaging through the pockets of JERRY ISHAM all exceeded the permissible scope of any putative *Terry* stop, as well as made the actions of Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET not the least intrusive means reasonably available to verify or dispel any suspicion or hunch.

71. The detention and continued detention of JERRY ISHAM and/or ANTHONY EDWARDS by Officer ROSE VALENTINO, Officer DAVID KNOX and Officer DUSTIN PEET constituted an arrest without probable cause.

72. By reaching deeply into the pockets on JERRY ISHAM's jacket (while JERRY ISHAM was in handcuffs) and pulling out and searching the items found therein constitutes a warrantless search that was not premised upon probable cause or exigent circumstances.

73. Defendants, while operating under color of state law, have deprived JERRY ISHAM and/or ANTHONY EDWARDS of the rights, privileges and immunities secured by the United States Constitution, including, without limitation, the Fourth and Fourteenth Amendments to the United States Constitution.

74. Defendants, while operating under color of state law, have deprived ANTHONY EDWARDS of the rights, privileges and immunities secured by the United States Constitution, including, without limitation, the First and Fourteenth Amendments to the United States Constitution.

75. As a direct and proximate result of Defendants' violations or deprivations of the rights, privileges and immunities of JERRY ISHAM and/or ANTHONY EDWARDS that are secured by the United States Constitution, JERRY ISHAM and/or ANTHONY EDWARDS have suffered damages.

## SECOND CAUSE OF ACTION
**(False Arrest / False Imprisonment)**

76. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

77. Defendants intentionally and unlawfully confined or detained JERRY ISHAM and/or ANTHONY EDWARDS within a limited area, for an appreciable time, against their will and

without lawful justification.

78. In intentionally and unlawfully confining or detaining JERRY ISHAM and/or ANTHONY EDWARDS, Defendants acted maliciously, in bad faith, or in a wanton or reckless manner with respect to the rights and interests of JERRY ISHAM and/or ANTHONY EDWARDS

79. As a direct and proximate of the foregoing conduct of Defendants, JERRY ISHAM and/or ANTHONY EDWARDS have suffered damages or, at a minimum, are entitled to nominal damage.

## THIRD CAUSE OF ACTION
### (Destruction of Records / Ohio Rev. Code § 149.351)

80. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

81. A public records request was submitted by counsel to the CITY OF CINCINNATI on behalf of JERRY ISHAM and ANTHONY EDWARDS on December 12, 2018, wherein various public records were sought concerning the foregoing events of November 17, 2018.

82. Amongst the public records sought pursuant to the foregoing public records request were all video recordings from any and all police officer's cruiser camera or body camera related to the events that occurred on November 17, 2018, at 1093 Morado Drive.

83. On April 18, 2019, the CITY OF CINCINNTI through the Office of the City Solicitor, acknowledged that, while certain responsive video recordings were provided, certain responsive video recordings were not provided in response to the public records request and, in fact, a total of seven responsive videos had been destroyed.

84. The CITY OF CINCINNATI has removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, seven (7) records pertaining or related to the events at 1093 Morado Drive on November 17, 2018.

85. JERRY ISHAM is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of the seven (7) records pertaining or related to the events at 1093 Morado Drive on November 17, 2018.

86. ANTHONY EDWARDS is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of the seven (7) records pertaining or related to the events at 1093 Morado Drive on November 17, 2018.

87. JERRY ISHAM and/or ANTHONY EDWARDS are entitled to injunctive relief to compel the CITY OF CINCINNATI to comply with its legal duties under Ohio Rev. Code § 149.351(A), together with an award of the reasonable attorney's fees incurred.

88. JERRY ISHAM and ANTHONY EDWARDS are each entitled to an award of $1,000 for each record which the CITY OF CINCINNATI has removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, together with an award of the reasonable attorney's fees incurred.

WHEREFORE, Plaintiffs pray that the Court enter judgment in their favor and against the Defendants as follows:

(1) granting compensatory damages against all Defendants in an amount to be determined at trial;

(2) granting punitive damages against the individual Defendants in an amount to be determined at trial;

(3) issuing appropriate injunctive relief against the CITY OF CINCINNATI to protect against the illegal removal, destruction, mutilation, or transfer of, or other damage to or disposition of police body camera videos or police cruiser videos;

(4) awarding Plaintiffs their attorney fees and costs pursuant to 42 U.S.C. §1988 and Ohio

- 16 -

Rev. Code § 149.351; and

(5) granting any other relief to which Plaintiffs may be entitled in law or in equity

Respectfully submitted,

/s/ Christopher P. Finney
Christopher P. Finney
Brian C. Shrive
Finney Law Firm LLC
4270 Ivy Pointe Blvd., Suite 225
Cincinnati, OH   45245
(513) 943-6650
*chris@finneylawfirm.com*
*brian@finneylawfirm.com*